UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In Re:<br><br>Michael Von Jones,<br><br>Debtor. | Bankruptcy Case<br>No. 19-40665-JMM |
|---|---|

**MEMORANDUM OF DECISION**

**Appearances:**

    Holly Sutherland, Meridian, Idaho, Attorney for Debtor.

    Kyle Bastian, Twin Falls, Idaho, Attorney for Creditor Wright Brothers Law Office, PLLC.

    David Gadd, Twin Falls, Idaho, Attorney for Creditor Safaris Unlimited, LLC.

*Introduction*

    Before the Court are two objections. First, debtor Michael Von Jones' ("Debtor") Amended Objection to Claim Number 1 filed by claimant Wright Brothers Law Offices, PLLC ("WBLO"). Doc. No. 147. Second, Safaris Unlimited, LLC's ("Safaris") objection to WBLO's Motion to Turn Over Settlement Proceeds. Doc. No. 153. The Court heard oral argument on the matter on April 26, 2022, and thereafter took the matter under advisement.

MEMORANDUM OF DECISION − 1

The Court has considered the evidence and arguments put forth, and this Memorandum Decision sets forth the Court's findings, conclusions, and reasons for its disposition of the objections.  Rules 7052; 9014.[1]

## Facts

Prior to filing his petition, Debtor was involved in state court litigation with Jeremy Sligar ("Sligar") and Overtime Garage, LLC. *Mike Jones v. Jeremy Sligar and Overtime Garage, LLC*, Twin Falls County Case No. CV42-16-1554 (the "Sligar Litigation").[2] WBLO represented Debtor in the Sligar Litigation for a short period of time and incurred attorney's fees.

Pre-petition, Safaris petitioned for and obtained a writ of execution, after which Safaris purchased Jones's rights to the Sligar Litigation at a sheriff's sale on June 17, 2017 by making a $2,500.00 credit bid. Also, Debtor was a party in another Idaho state court case to determine ownership of the Sligar Litigation. *Safaris Unlimited, LLC v. Jones*, 169 Idaho 644, 501 P.3d 334 (2021). Safaris had purchased Debtor's interest in the Sligar Litigation at a sheriff's sale with the intention of settling the lawsuit. The Idaho district court granted Debtor's motion to vacate the sheriff's sale, and Safaris appealed to

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

[2] Although the Court is unsure why "Mike Jones" was used for Debtor's name in the Sligar Litigation, it is clear from context that "Mike Jones" is the same as "Michael Von Jones."

MEMORANDUM OF DECISION − 2

the Idaho Supreme Court. While on appeal, WBLO incurred fees while providing services for Debtor in the Sligar Litigation.

The Idaho Supreme Court overturned the district court's decision and remanded for further proceedings. After the Idaho district court issued an order in accordance with the Idaho Supreme Court's instructions, Debtor appealed that order. While that appeal was pending, Debtor filed his chapter 13 petition. The automatic stay was lifted to allow the Idaho Supreme Court to determine ownership of the Sligar Litigation, and eventually the Idaho Supreme Court determined that Safaris would retain ownership rights, and that Debtor never had an interest in the Sligar Litigation.

Prior to the sheriff's sale ever taking place, Sligar and Safaris entered into a Conditional Settlement Agreement that provided that, if Sligar retained ownership rights of the litigation, Sligar would pay Safaris $100,000 and that "Safaris shall bear the risk of any attorney's liens or claims or other creditors of [Debtor], if any, against said amount."

WBLO filed a proof of claim in the amount of $33,093.60, representing the unpaid amount for legal services incurred by Debtor in the Sligar Litigation. WBLO's claim shows that the total amount is comprised of a secured portion of $32,724.60 for an attorney's lien pursuant to Idaho Code § 3-205, and an unsecured portion in the amount of $369.00 for a conservatorship. Debtor objected to the proof of claim.

Prior to confirmation, Debtor and WBLO stipulated as to the treatment of the proof of claim, the validity of which depended upon the Idaho Supreme Court's decision

MEMORANDUM OF DECISION − 3

in determining ownership rights of the Sligar Litigation. The Second Amended Plan provided for the treatment of the proof of claim:

> [WBLO] has filed a secured claim in the amount of $32,724.60 pursuant to Idaho Code section 3-205 for an attorney's lien on Debtor's claims in [the Sligar Litigation] that may become perfected if there is a settlement or award of damages in Debtor's favor. In the event of a settlement or award of damages in Debtor's favor in [that case], WBLO shall be paid $32,724.60 from such proceeds (as a secured claim) and shall have an unsecured Ch. 13 bankruptcy claim in the amount of $369.00. In the event there is no settlement or award of damages in Debtor's favor as described above, [WBLO] shall be paid $33,093.60 as a general unsecured claim, unless and until there is a settlement or award of damages in Debtor's favor in the Litigation, at which point [WBLO's] attorney lien shall attach to the settlement proceeds or damages.
> Debtor has a contingent asset in [the Sligar Litigation]. If Debtor regains ownership of this asset and either settles the matter or received an award of damages, Debtor will turnover proceeds to the Estate for distribution to creditors up to the amount necessary to pay creditors with allowable claims in full.

Doc. No. 109. Simply put, the Second Amended Plan recognized that Debtor had a contingent interest in the Sligar Litigation. This Court's Order Confirming Plan provides that "if the Idaho Supreme Court affirms the trial court's ruling or otherwise holds in favor of Safaris, then Safaris shall settle Debtor's claims in the Sligar Litigation action with Jeremy Sligar and Overtime Garage pursuant to the terms of the written Conditional Settlement Agreement[.]" Doc. No. 130, at p. 2.

### *Arguments*

Debtor objects to WBLO's proof of claim arguing that WBLO should seek to recover the attorney's fee amount from Safaris. WBLO first argues that its proof of claim should be allowed in full because Safaris has not remitted the amount from the settlement

MEMORANDUM OF DECISION − 4

proceeds. Second, WBLO argues that this Court should enter an order requiring Safaris to remit the attorney's fee amount from the settlement proceeds. Safaris objected to WBLO's motion for turnover, arguing that it is under no obligation to remit any funds from the settlement proceeds because the rights associated with the Sligar Litigation, and the proceeds therefrom, were never part of the estate.

### *Analysis and Disposition*

A.   Debtor's Objection to Proof of Claim Number 1

When a bankruptcy petition is filed, a bankruptcy estate is created. § 541(a). The estate is "comprised of all the following property, wherever located any by whomever held: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case." *Id*. The Supreme Court has noted that Congress intended the scope of § 541(a)(1) to be broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S. Ct. 2309, 2313, 76 L. Ed. 2d 515 (1983). The Idaho Bankruptcy Court has previously addressed whether a debtor's cause of action and recovery thereon:

> [A] cause of action that accrued pre-petition is property of the bankruptcy estate under § 541(a)(1), and a post-petition recovery on that cause of action could be either "proceeds" of or from property of the bankruptcy estate under § 541(a)(6) or property of the bankruptcy estate as an after-acquired "interest" under § 541(a)(7).

*Porrett v. Hillen (In re Porrett)*, 564 B.R. 57, 69 (D. Idaho 2016).

In this case, at the time the petition was filed, all the parties agree Debtor held only a contingent interest in the Sligar Litigation. Debtor tried unsuccessfully, albeit rather fervently, to stake his rights to the Sligar Litigation. The Idaho Supreme Court, after

MEMORANDUM OF DECISION − 5

several appeals, ruled against Debtor and in favor of Safaris. It is clear to the Court, then, based on the rulings made by the Idaho Supreme Court, that Debtor does not now have, nor ever had, a vested interest in the Sligar Litigation. Therefore, any claims made in the Sligar Litigation by the rightful plaintiffs, and any recovery thereunder, were never part of Debtor's estate.

WBLO argues that it should have a secured claim pursuant to § 1327, which provides:

> (a) *The provisions of a confirmed plan bind the debtor and each creditor*, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
> (b) *Except as otherwise provided in the plan or the order confirming the plan*, the confirmation of a plan vests all of the property of the estate in the debtor.

§ 1327 (emphasis added). The Second Amended Plan, which was confirmed by this Court, provides:

> [WBLO] has filed a secured claim in the amount of $32,724.60 pursuant to Idaho Code section 3-205 for an attorney's lien on Debtor's claims in [the Sligar Litigation] that *may become perfected if there is a settlement or award of damages in Debtor's favor. In the event of a settlement or award of damages in Debtor's favor* . . . [WBLO] shall be paid $32,724.60 from such proceeds (as a secured claim) and shall have an unsecured Ch. 13 bankruptcy claim in the amount of $369.00. *In the event there is no settlement or award of damages in Debtor's favor as described above*, [WBLO] shall be paid $33,093.60 as a general unsecured claim, unless and until there is a settlement or award of damages *in Debtor's favor* in the Litigation, at which point [WBLO's] attorney lien shall attach to the settlement proceeds or damages.

Doc. No. 109 (emphasis added).

MEMORANDUM OF DECISION − 6

First, although plan confirmation vests all property of the estate in Debtor, the Second Amended Plan recognized that Debtor held only a contingent interest in the Sligar Litigation. Second, the Second Amended Plan contemplates WBLO having a perfected lien, and therefore a secured claim, on condition that there is some sort of award or settlement in Debtor's favor. Not only did this never occur but, again, Debtor never even had an interest in the Sligar Litigation. There is no perfected lien because there was no settlement or award of damages in Debtor's favor.

Additionally, the Second Amended Plan provides that, "In the event there is no settlement or award of damages in Debtor's favor as described above, [WBLO] shall be paid $33,093.60 as a general unsecured claim[.]"[3] In this case, there was no settlement or award of damages in Debtor's favor. In accordance with the plain language of the Second Amended Plan, Debtor's objection will be sustained in part, and WBLO should have a general unsecured claim in the amount of $33,093.60.

Finally, Idaho Code § 3-205 provides a mechanism for attorneys to attach a lien to the proceeds of their client's causes of action:

> The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the

---

[3] The Court notes that Debtor, or Debtor's attorney, conspicuously omitted this language from his objection when quoting the Second Amended Plan and arguing in support of his position. *See* Debtor's Amended Objection to Proof of Claim 1, Doc. No. 147, ¶ 9. Debtor makes no attempt to address this language other than omitting it. Such an approach is, at best, insincere and, at bottom, deceptive.

MEMORANDUM OF DECISION − 7

> proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment.

Idaho Code § 3-205. With regard to this Idaho statute, this Court has previously stated, "The plain language of [Idaho Code § 3-205] allows only for a lien in favor of a lawyer against that lawyer's own client." *Elsaesser v. Raeon (In re Goldberg)*, 235 B.R. 476, 484 (Bankr. D. Idaho 1999); *see also Hopkins v. Thomason Farms, Inc. et al. (In re Thomason)*, No. ADV. 08-8032, 2009 WL 1851217, at *5–6 (Bankr. D. Idaho June 24, 2009) ("[Idaho Code § 3-205] recognizes that a charging lien in favor of an attorney may attach to the client's cause of action to secure the payment of attorneys' fees incurred by the attorney in procuring benefits for his client.").

In the Sligar Litigation, assuming that the settlement proceeds constitute a judgment in favor of Safaris, the proceeds emanating from that settlement are not derived from Debtor's cause of action; the Idaho Supreme Court determined that Debtor had no rights in the Sligar Litigation. Moreover, the settlement is not a verdict, report, decision, or judgment in favor of Debtor. If anything, it is in favor of Safaris. Therefore, applying the plain words and meaning of the statute, WBLO cannot have a lien in the settlement proceeds that may have been paid to settle the Sligar Litigation. *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015) ("A primary canon of statutory interpretation is that the plain language of a statute should be enforced according to its terms, in light of its context.").

The case law interpreting the statute informs this Court's decision. As the Idaho Supreme Court has explained:

MEMORANDUM OF DECISION − 8

> The law is well settled that an attorney in asserting a charging lien is entitled to recover against sums which his efforts have brought forth. Variously phrased, the intent of the law on this point is to allow the attorney an interest in the fruits of his skill and labors. The lien secures his right to compensation for obtaining the recovery or "fund" *for his client*. Of course, where the attorney's efforts are sterile, there would be nothing against which the lien right could be asserted, but where he has produced a fund, he has an equitable interest therein recognized by the lien statute and relevant case law.

*Skelton v. Spencer*, 102 Idaho 69, 625 P.2d 1072, 1078 (1981) (emphasis added).[4]

*Skelton* sets forth five distinct requirements for the establishment of a valid charging lien:

> (1) [T]hat there is a fund in court or otherwise available for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

*Id.* at 1079 (internal citation omitted).

The third requirement prescribed above is not satisfied. WBLO has not provided any evidence of an agreement between itself and Debtor that WBLO would be paid from the funds acquired upon successfully prevailing in the litigation. In fact, its submissions to this Court indicate just the opposite. *See* Doc. No. 149, WBLO's Motion for Turnover of Settlement Proceeds, p. 2 ("Debtor incurred the unpaid attorney fees at issue

---

[4] A portion of *Skelton* was overruled by the Idaho Supreme Court in *Kinghorn v. Clay*, 153 Idaho 462, 467, 283 P.3d 779, 784 (2012). The portion that was overruled, however, had to do with a party's standing on appeal.

MEMORANDUM OF DECISION – 9

($32,724.60) from October of 2017 through February of 2018 in the Sligar Litigation, which amount Debtor ultimately failed to pay."); *see also* Dkt No. 44, p. 2 ("[WBLO] billed [Debtor] on an hourly basis and sent him monthly invoices. [WBLO's Proof of Claim] is based on unpaid monthly invoices spanning October 2017 through February 2018."). Because WBLO fails to satisfy one of the *Skelton* requirements described above, its argument necessarily fails.[5]

Shortly after the Idaho Supreme Court issued its decision in *Skelton*, it issued a decision recognizing that an attorney's lien could arise even in situations in which no "fund" was created by the attorney's efforts. *See Frazee v. Frazee*, 104 Idaho 463, 660 P.2d 928 (Idaho 1983). In such cases "'[t]he equitable source of the claimed charging lien necessitates that an attorney take affirmative steps in an adjudicative process to perfect and reduce his lien to a judgment or order of the court." *Id.* at 931. The Idaho Supreme Court stated, "A charging lien is only brought about by some affirmative act of the party asserting the lien in reducing it to a judgment or order of the court." *Id.*

---

[5] WBLO must satisfy all of the requirements described in *Skelton*. Because WBLO has failed to prove one of those requirements, the Court finds it unnecessary to address the others. Moreover, under these facts, it is not entirely clear to the Court that all the other requirements can be satisfied. For example, although there are some general allegations that Sligar paid Safaris $100,000 as part of the Conditional Settlement Agreement, it is not clear to the Court that there is a fund, or any remaining fund, from which WBLO could be paid. Furthermore, not all equitable considerations land in favor of WBLO. WBLO will still be paid through the plan. Moreover, WBLO incurred attorney's fees in the Sligar Litigation during a period of time where Safaris and Debtor were engaged in other state court litigation before the Idaho Supreme Court to determine who retained ownership rights in the Sligar Litigation. Before that litigation had commenced, Safaris and Sligar had already entered into the Conditional Settlement Agreements settling the claims should Safaris be determined to be the rightful owner of the Sligar Litigation. In hindsight, the attorney's fees incurred by WBLO for services rendered on behalf of Debtor were unnecessary because Debtor never had any rights in the Sligar Litigation.

MEMORANDUM OF DECISION − 10

This Court has also previously discussed the limited circumstances under which an attorney's charging lien will be enforced:

> If the cause of action results in a judgment or settlement, i.e., creation of a "fund," and if that fund was the agreed upon source of payment of the fees (such as in a contingency fee arrangement), then a court with access to that fund may recognize the lien as an equitable matter in distributing the fund to parties claiming interests therein. If the five elements of *Skelton* do not exist, and the attorney is claiming a lien on property other than a "fund" which he helped create and to which it was agreed he would look for compensation, he must undertake an *adjudicative process* to "perfect and reduce his lien to a judgment or order of the court." A failure to do so, according to the [Idaho] court, raises due process implications.

*In re Secaur*, 83 I.B.C.R. 175, 177–78 (Bankr. D. Idaho 1983) (emphasis in original; internal citation omitted).

*Frazee* is of no help to WBLO here either. Even assuming arguendo that it is applicable under these unique circumstances, WBLO has not reduced any lien to judgment or order of any court. For these reasons, Debtor's objection to WBLO's secured claim will be sustained in part.[6] WBLO's claim will be allowed in the unsecured amount of $33,093.60.

---

[6] As stated below, unintended beneficiaries have no right to enforce contracts. Debtor was not an intended beneficiary of the Conditional Settlement Agreement entered into between Safaris and Sligar. Debtor, therefore, cannot enforce that part of the agreement that provides that Safaris shall bear the risk of any claims of Debtor. At best, Debtor is an unintended beneficiary because the Conditional Settlement Agreement was not entered into for Debtor's express benefit, although he may have benefitted incidentally therefrom. Debtor, however, is bound by the language of the Second Amended Plan. § 1327(a). Again, the Second Amended Plan provides that, "In the event there is no settlement or award of damages in Debtor's favor as described above, [WBLO] shall be paid $33,093.60 as a general unsecured claim[.]"

MEMORANDUM OF DECISION – 11

Case 19-40665-JMM   Doc 155   Filed 06/27/22   Entered 06/27/22 10:53:46   Desc Main
                    Document      Page 12 of 17

B.      Safari's Objection to WBLO's Motion for Turnover

WBLO seeks turnover of the settlement proceeds from Safaris, arguing that § 1327 and the Amended Plan requires turnover of said amount. At bottom, WBLO is seeking an order from this Court forcing Safaris to turnover the attorney's fee sought through enforcement of the Second Amended Plan.

Again, the Second Amended Plan provides that, "*In the event of a settlement or award of damages in Debtor's favor* in [the Sligar Litigation], [WBLO] shall be paid $32,724.60 from such proceeds (as a secured claim) and shall have an unsecured Ch. 13 bankruptcy claim in the amount of $369.00." That condition precedent did not occur, therefore WBLO cannot be paid from any settlement of the Sliger Litigation.

WBLO, however, argues that the Conditional Settlement Agreement requires Safaris to turnover said amount. Although the Second Amended Plan does not mention the Conditional Settlement Agreement, this Court's Order Confirming Plan provides that "if the Idaho Supreme Court affirms the trial court's ruling or otherwise holds in favor of Safaris, then Safaris shall settle Debtor's claims in the Sligar Litigation action with Jeremy Sligar and Overtime Garage pursuant to the terms of the written Conditional Settlement Agreement[.]" Doc. 130, at p. 2. The Idaho Supreme Court did, in fact, hold in favor of Safaris.

The Conditional Settlement Agreement, in turn, provides that Safaris would be required to "bear the risk of any attorney's liens or claims of other creditors of [Debtor], if any, against said amount." Doc. 147, at Exhibit A, ¶ 3. WBLO argues that Safaris bore

MEMORANDUM OF DECISION − 12

the risk of its attorney's fee claim by way of the Conditional Settlement Agreement and seeks an order from this Court enforcing said provision.

Section 1327(a) states, "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

An Idaho bankruptcy court has cited approvingly to cases holding that chapter 13 plans are more or less like consent decrees that should be interpreted according to contract principles. *In re Yett*, 540 B.R. 445, 450 (Bankr. D. Idaho 2015) (citing *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000)). The court observed:

> State law governs the interpretation of bankruptcy plans. Under Idaho law, when interpreting contracts, courts consider the language of the agreement the best indication of the parties' intent. However, when contractual provisions conflict, the interpretation of the written contract and of the intent of the parties is a matter for the trial judge's discretion. When interpreting them, Idaho courts are to construe the contract against the person who prepared the contract. Also, it is well established that specific provisions in a contract control over general provisions where both relate to the same thing.

*In re Yett*, 540 B.R. at 450 (cleaned up).[7]

The Idaho Supreme Court, with regard to incorporating another document into a contract by reference, has stated:

> For terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the

---

[7] Although the court was drawing from case law holding that chapter 11 plans should be interpreted in accordance with contract principles, and determined that chapter 12 cases should be interpreted the same way, it is appropriate, for the reasons stated in that decision, that chapter 13 plans should be interpreted according to contract principles as well.

MEMORANDUM OF DECISION – 13

> reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.

*In re Welch*, No. BR 14-40327-JDP, 2015 WL 4574805, at *2 (Bankr. D. Idaho July 29, 2015) (citing *Loomis, Inc. v. Cudahy*, 656 P.2d 1359, 1372 (Idaho 1982) (quoting *Scotts Valley Fruit Exch. v. Growers Refrigeration Co.*, 184 P.2d 183, 189 (Cal. Dist. Ct. App. 1947))). In addition, while exact words of incorporation are not required, to impliedly incorporate an external document by reference, the subject document must contain some clear and unequivocal reference to the fact that the terms of the external document are incorporated. *City of Meridian v. Petra, Inc.*, 299 P.3d 232, 243 (Idaho 2013) (citing *Harris, Inc. v. Foxhollow Constr. & Trucking, Inc.*, 264 P.3d 400, 416 (Idaho 2011) ("A signed agreement may incorporate by reference another agreement, which is not signed by the parties, if the terms to be incorporated are adequately identified and readily available for inspection by the parties.")).

While the Second Amended Plan does not expressly mention the Conditional Settlement Agreement, this Court's order confirming the plan does, providing that "if the Idaho Supreme Court affirms the trial court's ruling or otherwise holds in favor of Safaris, then Safaris shall settle Debtor's claims in the Sligar Litigation action with Jeremy Sligar and Overtime Garage *pursuant to the terms of the written Conditional Settlement Agreement*[.]" Doc. 130, at p. 2 (emphasis added). Even assuming the reference in this Court's order confirming the Second Amended Plan constitutes a valid

MEMORANDUM OF DECISION − 14

incorporation of the Conditional Settlement Agreement into the Second Amended Plan under Idaho law, WBLO cannot force Safaris to turnover said amount for another reason.

Idaho Code § 29-102 states that "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." The Idaho Supreme Court has previously explained how to determine whether a third-party is an intended or unintended beneficiary under a contract:

> Under Idaho law [I.C. § 29–102], if a party can demonstrate that a contract was made *expressly* for its benefit, it may enforce that contract, prior to rescission, as a third-party beneficiary. The test for determining a party's status as a third-party beneficiary capable of properly invoking the protection of I.C. § 29–102, is whether the agreement reflects an intent to benefit the third party. The third party must show that the contract was made primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary. Further, the *contract itself must express an intent to benefit the third party*. This intent must be gleaned from the contract itself unless that document is ambiguous, whereupon the circumstances surrounding its formation may be considered . . . a party must show that the contract was made for its *direct benefit*, and that it is not merely an indirect beneficiary.

*De Groot v. Standley Trenching, Inc.*, 157 Idaho 557, 562, 338 P.3d 536, 541 (2014) (quoting *Idaho Power Co. v. Hulet*, 140 Idaho 110, 112–13, 90 P.3d 335, 337–38 (2004) (internal citations and quotations omitted) (emphasis added)). "The mere mention of a third party in a contract does not render that party a third-party beneficiary absent a showing that the contract was made for that party's direct benefit. *Id.* (citing *Blickenstaff v. Clegg*, 140 Idaho 572, 579, 97 P.3d 439, 446 (2004)).

WBLO is not a party to the Conditional Settlement Agreement, nor is it an intended beneficiary. The Conditional Settlement Agreement does not expressly mention

MEMORANDUM OF DECISION − 15

WBLO whatsoever. The agreement was not expressly made for WBLO's benefit, nor is there any evidence that the agreement was made primarily for its benefit. WBLO may be an incidental beneficiary of the agreement, but that is an insufficient status under Idaho law to enforce the agreement. As such, Safaris will not be required to turnover said amount through the enforcement of the Second Amended Plan by this Court.

Accordingly, Safaris' objection will be sustained, and WBLO's motion for turnover will be denied.

### *Conclusion*

The Idaho Supreme Court determined Debtor never had any interest in the Sligar Litigation, and WBLO has failed to establish all the requirements to establish a valid attorney's lien on any of the settlement proceeds. The language of the Second Amended Plan only contemplates WBLO having a secured claim if Debtor's rights vested in the Sligar Litigation, which they never did. Therefore, in accordance with the plain language of the Second Amended Plan, WBLO shall have a general unsecured claim. Moreover, WBLO is merely an incidental beneficiary of the Conditional Settlement Agreement, and therefore cannot force turnover of any amount owed to it by Safaris. Accordingly, for the reasons set forth herein, Debtor's Amended Objection to Claim Number 1 will be sustained in part, WBLO's claim will be allowed in the unsecured amount of $33,093.60, comprised of an unsecured portion of $32,724.60 for attorney's fees and an unsecured

MEMORANDUM OF DECISION − 16

portion in the amount of $369.00 for a conservatorship. Safari's objection to WBLO's motion for turnover will be sustained.

A separate order will be entered.

DATED: June 27, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION – 17